COMMONWEALTH *vs*. MICHAEL A. HUFFMAN.

Worcester.  November 3, 1980. — January 20, 1981.

Present: GRANT, CUTTER, & GREANEY, JJ.

*Arrest.  Search and Seizure.  Constitutional Law*, Arrest, Search and sei-
    zure.  *Evidence*, Intent.

Although police officers who had observed, from a third floor window of
    a factory across the street from an apartment house, three men in an
    apartment transferring a green herb from one bag into numerous other
    smaller bags were not entitled by the provisions of G. L. c. 94C, § 41,
    to make a warrantless entry through a partly open door of the apart-
    ment in which one of the men lived, there was in the circumstances
    sufficient exigency to justify the entry of the apartment without a war-
    rant to arrest the men before they separated or destroyed the evidence.
    [187-190]
At the trial of a defendant upon a complaint charging him with unlawful
    possession of marihuana with intent to distribute it, the judge erred in
    excluding evidence offered by the defendant to show his intentions
    with respect to use of the drug.  [190]

COMPLAINT received and sworn to in the Central Worces-
ter Division of the District Court Department on September
27, 1979.

On appeal to the jury session of that division a motion to
suppress evidence was heard by *George*, J., and the case
was tried before him.

*Janet W. Fisher* for the defendant.

*W. Theodore Harris, Jr.*, Assistant District Attorney, for
the Commonwealth.

CUTTER, J.  Huffman was convicted, after a trial on
January 8 and 9, 1980, before a six-member jury in a
District Court, upon a complaint charging him with unlaw-
ful possession of marijuana, a Class D controlled substance,
with intent to distribute it.  See G. L. c. 94C, § 32, as in-

serted by St. 1971, c. 1071, § 1. Huffman was fined $625, a sentence later suspended. Prior to trial, the trial judge denied a motion to suppress all evidence seized from Huffman's apartment, on the ground that a "police officer observed through an open window what he believed to be a crime being committed" and "then walked through a partially open door to investigate and . . . obtained the evidence offered here."

At the hearing on the motion, Officer Del Rosso testified that about 9:40 P.M., on September 26, 1979, accompanied by a factory custodian, he was searching the third floor of a factory for intruders. The factory was about forty feet distant (across a thirty-two foot street) from the "three-decker" apartment house in which, on the third floor, Huffman lived as a tenant. The officer's attention was attracted by lighted windows, without curtains or shades. Through the windows (before he called for assistance) he observed for an appreciable time Huffman and two other men taking a green herb from one bag and putting it into numerous other smaller bags. Officer Del Rosso called for police assistance and then obtained binoculars (see *Commonwealth* v. *Ortiz,* 376 Mass. 349, 351-353 [1978]; compare *United States* v. *Taborda,* 635 F.2d 131 [2d Cir. 1980][1]) from his police cruiser. He was joined by several other officers. With them he observed Huffman and the other men through two different windows for about fifteen minutes more. The officers went to the apartment house, found "the first door downstairs" open and the hall door unlocked. They proceeded to the third floor landing. Huffman's apartment door was partially ajar (about five or six inches), music was "blaring," and there was a strong odor of marijuana. Through the open door he observed one of the men "still bagging" the green herb. The officers entered and found the three men, previously observed from the factory, sitting

---

[1] The initial observation in the present instance was without binoculars at a distance of about forty feet. Contrast the 190 feet distance in the *Taborda* case.

or standing near a table two or three feet from the windows. On the table were sixteen "baggies" containing the green herb and fifteen hand-rolled cigarettes strewn around the table. The herb on analysis proved to be marihuana. No attempt was made to obtain a search or arrest warrant. Officer Del Rosso's cruiser and the other officers' cruisers were parked in an alley out of sight of the apartment building.

1. General Laws c. 94C, § 41, purports to authorize a police officer to arrest without a warrant "(a) any person committing in his presence any offense set forth in this chapter" and (as amended by St. 1972, c. 806, § 29) "(c) any person who he has probable cause to believe has committed or is committing a violation of the provisions of section [     ] . . . thirty-two . . . ." The statute attempts to relax, in the context of drug-related offenses, the common law rule concerning arrest without a warrant. See G. L. c. 276, § 28, as amended through St. 1978, c. 447, § 4, which in some circumstances could be applied so as to present questions much like those here raised concerning c. 94C, § 41.

We first give consideration to the majority decision in two recent cases reaching the Supreme Court of the United States from New York, both decided in *Payton* v. *New York*, 445 U.S. 573, 583, 590, 602 (1980). That decision dealt with two warrantless, nonconsensual entries by the police, in one case, by violently breaking into an apartment, the home of one suspect, and, in the other, by pushing into the house of a second suspect past his young son who had opened the door. These entrances were held to be violations of the Fourth Amendment to the United States Constitution, despite a New York statute authorizing entry of premises to arrest for a felony without a warrant. At 590, the majority opinion of Justice Stevens stated, "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances[2] that threshold

---

[2] The New York Court of Appeals had treated both cases, later reviewed by the Supreme Court of the United States in the *Payton* case, as involving

may not reasonably be crossed without a warrant." See *Commonwealth* v. *Forde*, 367 Mass. 798, 806 (1975); *Commonwealth* v. *DiSanto*, 8 Mass. App. Ct. 694, 700 (1979).

In the present case, Huffman was a tenant of the apartment in which he was arrested and it was his home. His standing to assert a violation of the Fourth Amendment thus does not depend on whether in the apartment he entertained any "reasonable expectation of privacy." Compare *United States* v. *Salvucci*, 448 U.S. 83 (1980); *Rawlings* v. *Kentucky*, 448 U.S. 98, 105-106 (1980). See also *Commonwealth* v. *Boswell*, 374 Mass. 263, 269 (1978); *Commonwealth* v. *Frazer*, 10 Mass. App. Ct. 429, 432 (1980).

We are of opinion that the police, (a) by their observations from the third floor of the factory across the street (see *People* v. *Superior Court*, 102 Cal. App.3d 342, 346-347 [1980]); (b) by their entry through the open or unlocked ground floor doors of the apartment house; and (c) by proceeding without a warrant to the third floor landing outside Huffman's apartment, did not cross any threshold forbidden by the *Payton* case. See *Commonwealth* v. *Dinnall*, 366 Mass. 165, 166-167 (1974), where conversations overheard by the police from a similar position in a hallway were used in part as a basis for obtaining a warrant. Cf. *Commonwealth* v. *Hall*, 366 Mass. 790, 795 (1975), where the passageway was in the owner-occupant's exclusive control. We, however, read the *Payton* case as proscribing, in the absence of exigent circumstances, any nonconsensual entry through the partly open door of Huffman's apartment without a warrant, even though the officers had knowledge that a crime was probably there still in progress.

2. We next consider whether there were exigent circumstances which justified the entry of the apartment without a

"routine arrests" in which there was ample time to obtain a warrant. The Supreme Court thus had "no occasion to consider" whether "exigent circumstances" existed which "would justify a warrantless entry into a home for the purpose of either arrest or search." 445 U.S. at 583.

warrant. At the outset, we note that there is slight, if any, reason for the belief that application of the exclusionary rule (upon the facts here presented) will be useful in restraining future improper police conduct. On the contrary, as in *Rawlings* v. *Kentucky*, 448 U.S. at 110, "the conduct of the police here does not rise to the level of conscious or flagrant misconduct requiring prophylactic" suppression of the marihuana seized in Huffman's apartment. The police probably placed reliance on G. L. c. 94C, § 41, the overbroad terms of which may have given them misplaced but reasonable confidence in the course of action pursued. Huffman, by leaving his activities open to observation from the factory and his hall door open, had taken no precautions to protect whatever expectation of privacy he may have had. The police engaged in no violent entry. They had ample reason to believe that a crime was still in progress within the apartment. That crime would have been a felony (a) if Huffman had been guilty of a prior offense under G. L. c. 94C, § 32, as amended, or (b) if the contents of the small "baggies" had turned out to be a Class C rather than a Class D controlled substance.

The present case differs from *Commonwealth* v. *Forde*, 367 Mass. at 800-802, where the failure to obtain a warrant was held to require suppression of evidence because the probable necessity of a warrant should have been foreseen before an exigency arose. See *United States* v. *Adams*, 621 F.2d 41, 44-45 (1st Cir. 1980). Officer Del Rosso first observed Huffman's activities by inadvertence and moved rapidly to deal with the suddenly perceived situation. The question of exigency largely turns upon whether the officers reasonably thought that the group in the apartment would not long remain together and that the evidence was in imminent danger of destruction or dispersal. That the process of placing the green herb in small bags seemed well along suggested that the group might soon separate.

Where, as in this case, several Worcester police officers were gathered, one officer could have been sent to obtain a warrant, while the others remained to control the situation.

If the group in the apartment started to break up or to destroy the evidence, there might be a more immediate exigency clearly authorizing entry to enter the apartment to make the arrests. Even without such a new emergency, however, observation of the apartment while a warrant was obtained was likely to take substantial time at 9:40 P.M. , even in a city as large as Worcester. Taking into account all the circumstances, we think sufficient exigency existed to justify the prompt entry to arrest Huffman and his associates before they separated or destroyed any evidence.

It is obvious from the *Payton* case, of course, that where police officers contemplate an arrest in, or a search of, premises used as a suspect's home and for dwelling purposes, the prudent, necessary course is to obtain an arrest warrant or a search warrant, or both, except in exigent circumstances. Such officers should recognize that, particularly after the *Payton* case, (a) what constitutes an exigency is likely to be viewed strictly, and (b) statutes like G. L. c. 94C, § 41, cannot be relied on as a basis for entering without a warrant residential premises used by a suspect as his home.

3. At trial, the judge excluded evidence offered in behalf of Huffman to show his intentions with respect to the marijuana. Huffman should have been allowed to testify about his intended use of the drug, for the intent to distribute or to sell the marijuana was an essential element of the crime charged. See *Commonwealth* v. *Woodward*, 102 Mass. 155, 161, 162-163 (1869); *Commonwealth* v. *Goldberg*, 212 Mass. 88, 91 (1912); *Commonwealth* v. *Reynolds*, 338 Mass. 130, 134 (1958); *Commonwealth* v. *Kraatz*, 2 Mass. App. Ct. 196, 202 (1974); *Commonwealth* v. *Nardi*, 6 Mass. App. Ct. 180, 189 (1978); 2 Wigmore, Evidence § 581 (Chadbourn ed. 1979). Compare Leach & Liacos, Massachusetts Evidence 248-249 (4th ed. 1967). On this ground we reverse. If the case is retried, Huffman should be permitted to respond to a properly framed question concerning his intent.

4.  The order of the trial judge denying the motion to suppress is affirmed; the judgment is reversed and the verdict set aside.

*So ordered.*