## COMMONWEALTH vs. MICHAEL A. HUFFMAN.

Worcester. October 6, 1981. — January 19, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, & ABRAMS, JJ.

*Arrest. Search and Seizure*, Exigent circumstances. *Constitutional Law*, Arrest, Search and seizure.

Where police officers observed, from a third-floor window of a factory across the street from an apartment house, three men in an apartment transferring a green herb from one bag into numerous other smaller bags, there were no exigent circumstances justifying the police officers' warrantless entry through a partly open door of the apartment, in which one of the men lived, in the absence of the Commonwealth's showing that the defendant was armed, that he might flee or even was aware of the officers' presence, that there was a specific threat that the marihuana was about to be removed or destroyed, or that to obtain a warrant would have thwarted the arrest. [125-127]

COMPLAINT received and sworn to in the Central Worcester Division of the District Court Department on September 27, 1979.

On appeal to the jury session of that division, a motion to suppress evidence was heard by *George*, J., and the case was tried before him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Janet W. Fisher* for the defendant.

*Daniel F. Toomey*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. Following his conviction[1] on an indictment charging unlawful possession of marihuana, a class D controlled substance, with intent to distribute (G. L. c. 94C, § 32, inserted by St. 1971, c. 1071, § 1), Michael A. Huff-

---

[1] Huffman was fined $625, a sentence later suspended.

man appealed.[2] Huffman assigned as error an evidentiary ruling by the trial judge, and the denial of his motion to suppress the evidence seized by the police. The Appeals Court reversed on the evidentiary issue[3] (*Commonwealth* v. *Huffman*, 11 Mass. App. Ct. 185, 190-191 [1981]), and we granted the defendant's application for further appellate review on his claim that the denial of the motion to suppress was error. We agree with the defendant that his motion to suppress should have been allowed.

The Appeals Court concisely summarized the facts as follows. "At the hearing on the motion, Officer Del Rosso testified that about 9:40 P.M., on September 26, 1979, accompanied by a factory custodian, he was searching the third floor of a factory for intruders. The factory was about forty feet distant (across a thirty-two foot street) from the 'three-decker' apartment house in which, on the third floor, Huffman lived as a tenant. The officer's attention was attracted by lighted windows, without curtains or shades. Through the windows (before he called for assistance) he observed for an appreciable time Huffman and two other men taking a green herb from one bag and putting it into numerous other smaller bags. Officer Del Rosso called for police assistance and then obtained binoculars . . . from his police cruiser. He was joined by several other officers. With them he observed Huffman and the other men through two different windows for about fifteen minutes more. The officers went to the apartment house, found 'the first door downstairs' open and the hall door unlocked. They proceeded to the third floor landing. Huffman's apartment

[2] The case was tried in the six-member jury session of the District Court for the Central Worcester Division.

[3] The Appeals Court reversed the judgment of the District Court on the ground that the judge should have allowed the defendant to testify as to his intentions with respect to the marihuana seized. *Commonwealth* v. *Huffman*, 11 Mass. App. Ct. 185, 190-191 (1981). At oral argument, the Commonwealth conceded that the Appeals Court correctly decided this issue.

door was partially ajar (about five or six inches), music was 'blaring,' and there was a strong odor [of] marihuana. Through the open door he observed one of the men 'still bagging' the green herb. The officers entered and found the three men, previously observed from the factory, sitting or standing near a table two or three feet from the windows. On the table were sixteen 'baggies' containing the green herb and fifteen hand-rolled cigarettes strewn around the table. The herb on analysis proved to be marihuana. No attempt was made to obtain a search or arrest warrant. Officer Del Rosso's cruiser and the other officers' cruisers were parked in an alley out of sight of the apartment building." *Commonwealth v. Huffman*, 11 Mass. App. Ct. at 186-187.

The Appeals Court ruled that in the absence of exigent circumstances "any nonconsensual entry through the partly open door of Huffman's apartment without a warrant [is proscribed], even though the officers had knowledge that a crime was probably there still in progress." *Id.* at 188. See *Payton v. New York*, 445 U.S. 573 (1980); *Commonwealth v. Forde*, 367 Mass. 798 (1975). We agree with the Appeals Court that, in the absence of exigent circumstances, police officers could not enter Huffman's home without a warrant.[4] "[A] warrantless entry into a dwelling to arrest in the absence of sufficient justification for the failure to obtain a warrant" is prohibited. *Id.* at 806 & n.3.

We turn to the Commonwealth's claim that exigent circumstances were present. The burden is on the Commonwealth "to demonstrate that exigency." *Id.* See *Commonwealth v. Hall*, 366 Mass. 790, 801-802 (1975); *Commonwealth v. Antobenedetto*, 366 Mass. 51, 57 (1974); *Vale v. Louisiana*, 399 U.S. 30, 34 (1970). "Under the exception for exigent circumstances, there must be a showing that it was impracticable for the police to obtain a warrant, and the standards

---

[4] Certain crimes observed by officers create their own exigent circumstances. For example, should an officer observe a murder or other violent disturbance in progress, exigent circumstances would be apparent. The crime in this case, however, is one of nonviolence.

as to exigency are strict." *Commonwealth* v. *Forde*, 367 Mass. at 800. *Commonwealth* v. *Hall*, 366 Mass. at 801. Donnino & Girese, Exigent Circumstances for a Warrantless Home Arrest, 45 Alb. L. Rev. 90, 113 (1980).[5]

The Commonwealth's claim that there were exigent circumstances excusing the lack of a warrant is not supported by the record. The Commonwealth did not offer any evidence that the defendant was armed, that he might flee, or even that the defendant was aware of the officers' presence.[6] It does not appear in the record that there was any threat that the evidence would soon be removed from the premises. Further, Officer Del Rosso "imagine[d]" that there was a clerk on duty at the District Court for the Central Worcester Division on that evening, yet the Commonwealth did not offer any evidence as to the time it would take to get a warrant, or indicate that it would be impractical to get one.

The Commonwealth argues that exigent circumstances existed because of the potential destruction of the evidence, a well-established exception to the warrant requirement. See *Commonwealth* v. *Forde*, 367 Mass. at 800; *Common-*

---

[5] In the circumstances of this case there is no difference between the principles governing search warrants and arrest warrants. "The simple language of the [Fourth] Amendment applies equally to seizures of persons and to seizures of property. . . . [T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' *United States* v. *United States Dist. Court [for the E. Dist. of Mich.]*, 407 U.S. 297, 313 [1972]." *Payton* v. *New York*, 445 U.S. 573, 585-586 (1980). See Moscolo, Arrest Warrants and Search Warrants: The Seizure of a Suspect in the Home of a Third Party, 54 Conn. B.J. 299, 306 (1980).

[6] Exigent circumstances may arise if a defendant becomes aware, or is certain to become aware, of an officer's presence. Compare *Benefield* v. *State*, 160 So. 2d 706 (Fla. 1964); *State* v. *Nagel*, 308 N.W.2d 539 (N.D. 1981), with *People* v. *Wormack*, 91 Ill. App. 3d 169 (1980); *People* v. *Pakula*, 89 Ill. App. 3d 789 (1980); *State* v. *Platten*, 225 Kan. 764 (1979); *State* v. *Coyle*, 95 Wash. 2d 1 (1980). See *United States* v. *Rubin*, 474 F.2d 262 (3d Cir. 1973); Comment, Warrantless Residential Searches to Prevent the Destruction of Evidence: A Need For Strict Standards, 70 J. Crim. L. & Criminology 255, 269 (1979). Cf. *Commonwealth* v. *Hall*, 366 Mass. 790, 803 & n.16 (1975). The defendant, and the two other men, looked "surprised" as the officers entered the apartment, which suggests that the men were unaware of the officers' presence.

*wealth* v. *Hall*, 366 Mass. at 801-802. Comment, Warrantless Residential Searches to Prevent the Destruction of Evidence: A Need for Strict Standards, 70 J. Crim. L. & Criminology 255 (1979). However, the question whether exigent circumstances exist depends upon an evaluation of all the circumstances. "[I]n the cases held 'exigent' a quite specific threat has been found: 'based on the surrounding circumstances or the information at hand' it is reasonably concluded that 'the evidence will be destroyed or removed before . . . [the police] can secure a search warrant.'"[7] *Commonwealth* v. *Hall*, 366 Mass. at 802, quoting from *United States* v. *Rubin*, 474 F.2d 262, 268 (3d Cir. 1973). "The essence of an exigency is the existence of circumstances known to the police which prevent them from taking the time to obtain a warrant because to do so would thwart . . . the arrest." Latzer, Police Entries to Arrest — *Payton* v. *New York*, 17 Crim. L.B. 156, 163 (1981).

In this case, the Commonwealth did not introduce evidence that there was a specific threat that the marihuana was about to be destroyed or that to obtain a warrant would have thwarted the arrest. Moreover, "[a] number of police officers were on hand; they could readily have maintained a presence to prevent suspicious access to the premises until a warrant could be obtained." *Commonwealth* v. *Hall*, 366 Mass. at 803. See, especially, *id*. at 803 n.16; Note, Police Practice and the Threatened Destruction of Tangible Evidence, 84 Harv. L. Rev. 1465, 1474-1475 (1971). The Commonwealth did not show the existence of an exigency.

---

[7] In *United States* v. *Davis*, 461 F.2d 1026 (3d Cir. 1972), a case relied on by the Commonwealth, an informant told police that the defendant was cutting heroin for *immediate* distribution. The court found that exigent circumstances existed because there was an immediate threat that the evidence would be distributed. The informant had warned the officer that "if he did not hurry . . . the heroin would be 'on the street.'" *Id*. at 1030. There was also testimony that it took only fifteen minutes to "cut" an ounce of heroin and prepare it for retail sale. *Id*. at 1031. See *People* v. *Beachman*, 98 Mich. App. 544 (1980).

In contrast, the Commonwealth, here, offered no evidence that the defendant planned an immediate distribution of the marihuana.

We cannot speculate or go outside of the record to justify the warrantless entry into a private residence. Cf. *Commonwealth* v. *Ferguson*, 384 Mass. 13 (1981).

Since the Commonwealth has failed to meet its burden of justifying the warrantless entry the motion to suppress should have been allowed. *Commonwealth* v. *Forde*, 367 Mass. at 806. The judgment is reversed and the verdict set aside. The order of the trial judge denying the motion to suppress is reversed and the case remanded to the District Court for the Central Worcester Division six-man jury session for further proceedings.

*So ordered.*