COMMONWEALTH *vs.* JAMES M. PAPADINIS.

Essex.    December 5, 1986. — February 27, 1987.

Present: GRANT, PERRETTA, & KASS, JJ.

*Homicide. Evidence,* Judicial discretion, Relevancy and materiality, State of mind. *Practice, Criminal,* Judicial discretion, Lesser included offense. *Wanton or Reckless Conduct. Error,* Harmless.

At the trial of an indictment charging murder in the first degree arising from an incident in which a police officer who had stopped an automobile driven by the defendant was dragged to his death when the defendant suddenly accelerated, catching the officer's arm in a partially open window of the vehicle, it was error as matter of law for the judge to fail to exercise his discretionary right to admit in evidence certain testimony offered by the defendant in explanation of his conduct in suddenly driving off, apparently in the mistaken belief that he had no discretion to allow such testimony, inasmuch as the defendant's intent when he drove off was a central issue in the case. [572-574]

At the trial of an indictment charging murder in the first degree in which the defendant raised the defense that fear, leading to panic, caused an accident which had resulted in the victim's death, but the jury nevertheless returned a verdict of guilty of involuntary manslaughter, it was error requiring reversal for the judge, who admitted in evidence one explanation offered by the defendant for his fear of the victim, to exclude additional testimony offered by the defendant to explain that his fear was caused by what he had previously heard and read about the victim, where the excluded testimony bore on the central issue in the case. [574-576]

INDICTMENT found and returned in the Superior Court Department on June 26, 1985.

A motion in limine was heard by *Peter F. Brady,* J., and the case was tried before him.

*Albert L. Hutton, Jr.,* for the defendant.

*Elin H. Graydon,* Assistant District Attorney (*Robert N. Weiner,* Assistant District Attorney, with her) for the Commonwealth.

KASS, J. There is an initial question whether the evidence offered as bearing on the defendant's state of mind was wrongly excluded. We decide that it was and inquire next whether, considering the theory of the defense and the jury's verdict, the error was harmless.

The case is a grim and tragic one.

On June 18, 1985, about 2:30 A.M., Harold Vitale, a Saugus police officer, stopped for minor traffic violations a car carrying four young men. There was also some suspicion that the four had been involved in illicit setting off of fireworks earlier that night. Officer Vitale approached the car and asked the driver, the defendant Papadinis, for his license and the car's registration. From his police cruiser, Officer Vitale made the usual checks — validity of license and registration, any outstanding violations or arrest warrants. He returned to the stopped car to request the names and addresses of the passengers. More conversation followed between Officer Vitale, who was back in his cruiser, and Saugus police headquarters. Papadinis had a police scanner (a radio which received police radio broadcasts) over which he and his friends listened to the radio traffic between Officer Vitale and headquarters. What they overheard discomfited Papadinis (there was an outstanding warrant for his arrest), who expressed to his companions (such, at least, was the testimony most favorable to the Commonwealth) an intent to "take off."

When Officer Vitale came back to the defendant's car for a third time, he asked the defendant to step out of the car. Papadinis did not, demanding to know the reason for the officer's request. Officer Vitale reached into the partially open window to unlock the door to the left of the driver's seat, whereupon Papadinis put the car in drive and stepped on the gas, dragging Officer Vitale with him. The police officer begged Papadinis to stop the car. Instead, Papadinis accelerated and ultimately dashed Officer Vitale against a sign post. Officer Vitale died of resulting multiple traumatic injuries to skull, brain, pelvis, and spinal cord.

Upon an indictment against Papadinis for murder in the first degree (G. L. c. 265, § 1), the jury returned a verdict of guilty of the lesser included offense of involuntary manslaughter.

1. *Exclusion of certain evidence offered to explain the de-fendant's conduct*. To prove first degree murder, the Common-wealth undertook to show that Papadinis acted with deliberate premeditation and extreme atrocity or cruelty. See G. L. c. 265, § 1. His intent when he drove off was a central element in the case. In support of its position, the Commonwealth adduced evidence from the three passengers tending to prove that Papadinis intended to bolt, rolled up his window to trap the police officer's arm, ignored his pleas to stop, and ignored the exhortation of his companions to stop and let the policeman go. There was further testimony that Papadinis was anxious about being arrested and irate about remarks by the police about him which he had overheard on his scanner.

Papadinis framed as his defense that he was frightened of Officer Vitale, that he did not realize the officer had an arm inside the car, that he drove off in fear and panic, and that it was all a terrible accident. In support of that position Papadinis sought to testify that he was afraid of Officer Vitale because he realized that Vitale was the same policeman who had shot and wounded a young man in the course of a motor vehicle stop eights years earlier. The incident had been widely reported in the media. That explanation for Papadinis's terror and panic was excluded. He was permitted to testify only that he was afraid of Officer Vitale because the officer placed a hand on his gun when he ordered Papadinis out of the car.

In the face of evidence that portrayed his conduct as cal-culatedly vicious, Papadinis had a right to explain his intention in driving off. The principle is settled that a defendant may explain conduct which on its face is incriminating. *Crane* v. *Kentucky,* 473 U.S. 683, 690-691 (1986) (explanation of why the defendant had confessed to the crime charged). *Common-wealth* v. *Goldberg,* 212 Mass. 88, 91 (1912) (explanation of why the defendants had left the jurisdiction). *Commonwealth* v. *Britland,* 300 Mass. 492, 498 (1938) (why the defendant had thrown away a gun). *Commonwealth* v. *Fatalo,* 345 Mass. 85, 86-87 (1962) (failure to mention at arrest a witness who later corroborated an alibi). *Commonwealth* v. *Hicks,* 375 Mass. 274, 277-278 (1978) (why the defendant had a knotted

woman's stocking in his possession). *Commonwealth* v. *Mandeville*, 386 Mass. 393, 399-400 (1982) (explanation of damaging testimony elicited on cross-examination). *Commonwealth* v. *Helfant*, 398 Mass. 214, 222 (1986) (also explanation of damaging testimony elicited on cross-examination). *Commonwealth* v. *Huffman*, 11 Mass. App. Ct. 185, 190 (1981), *S.C.*, 385 Mass. 122, 123 n.3 (1983) (intended use of drugs). 2, 7 Wigmore, Evidence §§ 581 & 1965 (Chadbourn rev. 1979, 1978). As several of these authorities have put it, the defendant is permitted to testify what was in his mind and, thus, elucidate the state of his mind. Papadinis should have been allowed to testify that he was afraid because of what he had read, seen, or heard about Officer Vitale. That the incident had been bruited about Saugus some years before and that Papadinis had not shown he knew what Officer Vitale looked like were points that went to weight, not admissibility.

It is perhaps useful to review what the proffered evidence was not, because there was some confusion on that score at trial.[1] The material was not offered for (a) its truth (i.e., that Vitale was dangerous); (b) that Vitale had committed prior bad acts; or (c) that Vitale had a reputation for violence. For the purpose of points (a) and (b) the evidence would not have been admissible in any circumstances, and for point (c) it would have been irrelevant because Papadinis expressly renounced self-defense as a reason for his acts.[2]

From the record it is apparent that the judge thought the contested evidence was inadmissible as matter of law and that he was without discretion in ruling on it. If the defense had failed to establish, as it contended, that the 1977 incident had been the subject in 1983 of comment in newspapers or other media

---

[1] Not on the part of defense counsel, who was laudably precise about his limited purpose, made a detailed offer of proof, and, when the proffered evidence was excluded, took care that his client would not blurt out the forbidden material.

[2] If self-defense is claimed, the defendant is entitled to offer evidence tending to show that the victim had a reputation for being violent or quarrelsome, if the defendant knew of that reputation. *Commonwealth* v. *Dilone*, 385 Mass. 281, 285 (1982).

operating in the Saugus area, it would have lain within the discretion of the judge to exclude the evidence offered on the ground it was too remote in time. See *Commonwealth* v. *Todd,* 394 Mass. 791, 798 (1985); *Commonwealth* v. *Glen,* 12 Mass. App. Ct. 317, 321-322 (1981); *Commonwealth* v. *Jacobson,* 19 Mass. App. Ct. 666, 678 (1985). Failing to recognize a discretionary right to make a ruling and, therefore, not exercising that right is error as matter of law. *Commonwealth* v. *Knight,* 392 Mass. 192, 194 (1984). *Commonwealth* v. *Edgerly,* 13 Mass. App. Ct. 562, 571 (1982).

2. *Harmfulness of the error.* In order to convict Papadinis of involuntary manslaughter the jury must have rejected that he had formed an intent to kill and must have concluded that he had acted in a wanton and reckless manner. That phrase implies that the defendant knew, or must have known, that his action posed grave danger to another and chose, nevertheless, to run the risk rather than refrain from the act which caused harm. See *Commonwealth* v. *Welansky,* 316 Mass. 383, 398-401 (1944), in which the legal characteristics of involuntary manslaughter are extensively discussed. See also *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 747 (1975); *Commonwealth* v. *Godin,* 374 Mass. 120, 125-127 (1977); *Commonwealth* v. *Michaud,* 389 Mass. 491, 495-496 (1983); *Commonwealth* v. *Sullivan,* 20 Mass. App. Ct. 802, 808-809 (1985).

As was said in *Welansky,* at 398, "[t]he standard of wanton or reckless conduct is at once subjective and objective . . . ." That is, the trier of fact must consider the circumstances known to the actor (e.g., whether the officer's arm was in the car), as well as whether a reasonable person would know that an act is so dangerous that death or serious injury would result. "[R]ecklessness in a moral sense," Justice Holmes observed, "means a certain state of consciousness with reference to the consequences of one's acts." *Commonwealth* v. *Pierce,* 138 Mass. 165, 175 (1884). A "failure or inability to predict [the consequences] was immaterial, if, under the circumstances known to [the defendant], the court or jury, as the case might be, thought them obvious." *Id.* at 178. There is a difference in involuntary manslaughter between the wanton and reckless

act, which is intended, and the result, a death, which is unintended. *Commonwealth* v. *Welansky,* 316 Mass. at 398 & 401.

With these principles in mind, we propound a hypothesis for the proposition that the erroneous exclusion of evidence about the defendant's state of mind must have been harmless. The jury must have found that Papadinis drove off or continued to drive in a manner that a reasonable person would have known would cause substantial risk of harm to Officer Vitale. That finding excludes the defense version that Papadinis thought the officer was a foot or so away from the car and that dragging the policeman was a lamentable accident. Might it then be said that the excluded evidence concerning a reason for Papadinis to fear Officer Vitale could have had no bearing on defining the act of dragging the officer as wanton and reckless? Self-defense, it will be recalled, was not in the case. If the jury rejected the accident defense, involuntary manslaughter would be the least grave crime of which they could find the defendant guilty. Driving off at great speed with a man's arm in the car was, on an objective basis, wanton and reckless irrespective of the defendant's subjective intent. The defendant's fear would not be a factor, and the error in refusing to allow the defendant to testify about the reasons for his fear is reduced to a harmless one.

The difficulty with the analysis we have just pursued is that it excludes other possible lines of reasoning by the jury bearing on the circumstances known to the defendant. For example, the jurors might have rejected altogether Papadinis's explanation that he was afraid because Officer Vitale had his hand on his gun. There was powerful evidence that this had not happened. (If he had one hand on the outside door handle and another hand inside the door, which hand was on the gun?) Rather, the jury might have found that Papadinis was unafraid of Officer Vitale, simply wanted to avoid arrest, but did not intend the officer's death. It might then have made a difference had evidence that could be thought to be cogent about the defendant's fear been placed before the jury. The jury might have accepted the defendant's explanation that he was much afraid, beclouded by panic, and consequently drove off unaware

that Officer Vitale was hooked into the car. In that case, the jury, taking a particular view of the circumstances known to the defendant, could accept the accident theory. The question is not whether we would accept that hypothesis, but whether the defendant was entitled to have the jury hear evidence which might have induced it to consider it. The plausibility of the defense is not for the court; it is the province of the jury.

The alternative scenarios of jury deliberations we have developed illustrate the uncertainty of attempting to divine what impact the excluded evidence would have had on the jury. It is an exercise to be conducted with great circumspection. See *Kotteakos* v. *United States*, 328 U.S. 750, 764-765 (1946); *Commonwealth* v. *Gilday*, 382 Mass. 166, 178 (1980); *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445-446 (1983). Harmless error, beyond a reasonable doubt, is, as we had recent occasion to observe, "a useful and practical principle but must be applied with restraint . . . ." *Commonwealth* v. *Seminara*, 20 Mass. App. Ct. 789, 798 (1985). Unlike *Commonwealth* v. *Helfant*, 398 Mass. at 223, and *Commonwealth* v. *Garuti, ante* 561 (1987), where the excluded evidence dealt with a collateral matter, here the excluded evidence bore on the central issue in the case.

It is necessary to reverse the judgment and set aside the verdict.

*So ordered.*