## COMMONWEALTH *vs.* NELSON GARCIA.

No. 92-P-501.

Hampden. December 17, 1992. - April 27, 1993.

Present: KASS, JACOBS, & GREENBERG, JJ.

*Controlled Substances. Constitutional Law*, Search and seizure, Probable cause, Assistance of counsel. *Search and Seizure*, Probable cause, Standing to object, Exigent circumstances, Expectation of privacy, Mailbox, Arrest. *Probable Cause.*

Where a criminal defendant did not demonstrate standing to challenge the lawfulness of the search of another resulting in a seizure of narcotics, defense counsel's failure to have moved to suppress the evidence seized was not ineffective assistance of counsel. [389-391]

A locked mailbox in an apartment hallway was an area in which a criminal defendant had a reasonable expectation of privacy and a warrantless search of the locked mailbox was unlawful where it was neither incident to the defendant's arrest nor justified by any exigent circumstances, and the defendant's motion to suppress items found in the mailbox should have been allowed. [391-395]

Evidence at the trial of an indictment for distribution of a Class B controlled substance, cocaine, was sufficient to warrant the submission of the charge to the jury. [395]

COMPLAINT received and sworn to in the Holyoke Division of the District Court Department on October 15, 1990.

A pretrial motion to suppress evidence was heard by *William B. McDonough*, J. The case was heard by *William W. Teahan, Jr.*, J., and a motion for a new trial was also heard by him.

*Kim C. Rosen* for the defendant.

*Marcia B. Julian*, Assistant District Attorney, for the Commonwealth.

GREENBERG, J. The defendant was convicted of five counts[1] of various drug-related offenses after a jury-waived trial in a District Court, at which the Commonwealth relied upon evidence garnered as a result of two discrete warrantless searches: the first involved Hector Rodriguez, to whom the defendant allegedly sold cocaine; the second, of the defendant himself, led to his arrest. At the trial, the Commonwealth offered evidence in some respects different from what had been presented to the same judge at the hearing on the defendant's motion to suppress evidence obtained in the search of his person.

Our task has been made more difficult because the judge did not make any findings after he ruled against the defendant on the motion to suppress evidence obtained in searches of his person and of a nearby mailbox.[2] This failure, which is not, in and of itself, reversible error, requires us carefully to examine "the record to see if the findings implicit in the judge's ruling are supported." *Commonwealth* v. *Gaulden*, 383 Mass. 543, 547 (1981). Another part of the defendant's consolidated appeal, which is addressed to the judge's denial of his motion for a new trial, is premised on the theory that defense counsel mistakenly assumed the defendant lacked standing to challenge the search of Rodriguez. Represented by new counsel on appeal, he argues that the failure to file a motion to suppress evidence seized from Rodriguez amounted to ineffective assistance of counsel.

*The trial.* Following the denial of his suppression motion, the defendant was convicted: (1) of the knowing possession of a Class A substance, heroin, and a Class B substance, cocaine, with intent to distribute both (G. L. c. 94C, § 32); (2) of separate counts alleging that those offenses occurred

---

[1]Two of the convictions were filed, but as the record does not reflect that the defendant consented to the filing, we review those convictions as well. *Commonwealth* v. *Paniaqua*, 413 Mass. 796, 797 n.1 (1992). See *Commonwealth* v. *Cogswell*, 31 Mass. App. Ct. 692, 695 (1991).

[2]The Supreme Judicial Court has repeatedly said that it is both "prudent" and "desirable" for a judge to make findings at the conclusion of the suppression hearing. *Commonwealth* v. *Forrester*, 365 Mass. 37, 45 (1974), citing *Commonwealth* v. *Cook*, 351 Mass. 231, 234 (1966).

within 1,000 feet of school property (G. L. c. 94C, § 32J); and (3) of a single count of unlawful distribution of a Class B substance, cocaine (G. L. c. 94C, § 32A).[3]

The Commonwealth's case against the defendant ran as follows. On October 15, 1990, at about 1:00 P.M., a seven-person team of police officers was assigned to the surveillance of a block of apartments on Ferguson Place in Holyoke, an area known by the police to be favored by drug dealers to hawk their wares. From his vantage in an unmarked cruiser, Officer Guzman peered through his binoculars and spied the defendant, about 200 feet away, talking to several persons on the sidewalk near the apartment building. He observed a motor vehicle driven by a woman pull into a vacant lot in front of No. 3 Ferguson Place. A male occupant, later identified as Hector Rodriguez, got out of the automobile, engaged the defendant in conversation, and handed him money. This was followed by their entrance into No. 3 Ferguson Place. A moment later Rodriguez — now alone — left the building, put a small package into his left front pants pocket and departed in the same vehicle. Believing this to be a drug transaction, Guzman radioed his observations to the other officers patrolling the area in unmarked cruisers.

Officers Gelinas and Marouka, who received Guzman's radio transmissions, stopped the vehicle described in the message. Rodriguez was asked to step out and was patted down. Officer Marouka, knowing that Rodriguez had placed something in his pocket, removed needles and syringes from his left front pocket and Gelinas removed four bags of cocaine (about 6 grams) from his right front pocket.

While this was going on, two other officers, Egan and Fletcher, approached the defendant, who remained on the sidewalk outside No. 3 Ferguson Place which, as it turned

---

[3]The defendant was also charged with a separate count of unlawful distribution of heroin, a Class A substance, under G. L. c. 94C, § 32A, which resulted in a required finding of not guilty. Additionally, the defendant was charged with conspiracy to violate the controlled substances laws, G. L. c. 94C, § 40, but the District Court lacked jurisdiction over this offense and the judge dismissed that count prior to the trial, see G. L. c. 218, § 26.

out, was not the defendant's residence. When questioned, he denied any knowledge of meeting Rodriguez there and denied selling drugs on October 15. Meanwhile, Egan nosed around the mailboxes located in the front hallway. He discovered that inside the only locked mailbox was a magnetic key case which he could see through the slits. According to Egan's testimony, it had become a modus operandi of the drug trade to conceal narcotics inside magnetic key cases. Egan instructed Fletcher to search the defendant for any item that would unlock the mailbox. Found in the defendant's pockets were a set of keys and $110 in cash. Comparing the markings on the mailbox with those of each of the keys, Egan was able to match one of them, and managed to open the mailbox, which bore no identification. Within the magnetic key case were three "bags" of heroin and two "bags" of cocaine. The trial closed on that note.

1. *The Failure of Counsel to Contest the Search of Rodriguez.*

Apart from claimed emanations from the negative decision on the suppression motion defense counsel did file, the defendant argues that he was denied the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and art. 12 of the Declaration of Rights of the Massachusetts Constitution because of trial counsel's failure to move to suppress the cocaine found on Rodriguez. The defendant contends that had the search of Rodriguez, which netted the four bags of cocaine, been successfully challenged, the evidence would have been insufficient to convict him of cocaine distribution. Further, the argument goes, all of the other evidence should have been suppressed as "fruit of the poisonous tree." The Commonwealth, on the other hand, counters that defense counsel was not ineffective because filing a motion to suppress the evidence from the search of Rodriguez would have been futile as the defendant lacked the requisite standing. On this score, we agree with the Commonwealth's position.

The defendant does not claim that he had an expectation of privacy to contest the search of Rodriguez or the automo-

bile in which he was a passenger; rather, he invokes the automatic standing rule explicitly recognized under art. 14 of the Massachusetts Declaration of Rights. See *Commonwealth* v. *Amendola*, 406 Mass. 592 (1990).[4] According to the defendant, the cocaine was taken from Rodriguez's person after the stop without probable cause. As the search of Rodriguez resulted in the evidence which linked the defendant to the officers' earlier observations, and formed the evidentiary basis of his conviction for unlawful distribution of cocaine, the defendant claims to have automatic standing.

His argument ignores the central premise of the automatic standing rule; namely, that the crime for which the defendant is convicted must have as an essential element of guilt, possession (either actual or constructive) at the time of the contested search. *Amendola, supra* at 601. Admittedly, possession is an essential element in one of the categories of activity prohibited by G. L. c. 94C, § 32A, under which the defendant was convicted. *Commonwealth* v. *Frazier*, 410 Mass. 235, 245 (1991). However, possession by the defendant of the contraband seized from Rodriguez was not the subject of any complaint against him. *Id.* at 245 n.6. See *Commonwealth* v. *Scardamaglia*, 410 Mass. 375, 379 (1991) (no tangible evidence seized in the allegedly unlawful stop of a purchaser of drugs was introduced against the defendant who was charged with the sale); *Commonwealth* v. *Santaliz*, 413 Mass. 238, 240 n.5 (1992).[5]

---

[4]In *Amendola*, the police searched two automobiles, finding narcotics in one and a scale in the other. The defendant disclaimed any interest in the drugs, the scale, or the automobiles, and the judge denied his motion to suppress. The Supreme Judicial Court held that the defendant had automatic standing to challenge the search of a vehicle driven by him in which the drugs were found, but that he had to show a legitimate expectation of privacy in the automobile in which the scale was found because the possession of the scale was not an essential element of proof for any of the offenses charged.

[5]*Frazier* held that the defendant had standing to contest the search where he was convicted of trafficking based upon cocaine seized from the handbag of a woman with whom he was acting in concert, although he was not present at the place where the search was conducted. In *Santaliz*, the defendant was granted standing to challenge the search of his companion as he was charged with possession of heroin with intent to distribute on the

As to the transaction with Rodriguez, the complaint alleged distribution and the evidence at trial was submitted on that theory. At no time during the trial did the Commonwealth suggest, or even hint, for purposes of proving the distribution charge, that the defendant constructively or jointly possessed the cocaine which he had supposedly sold to Rodriguez. The essence of our holding on this point is that once possession or a claim of right to possession of the contraband ends, so does standing to contest the search. At that stage of the transaction the defendant's interest is in the sale process — not the drugs. Consequently, on the record before us, any failure to challenge the search of Rodriguez was inconsequential and certainly not an instance of "serious incompetency, inefficiency, or inattention of counsel — behavior . . . falling measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Pena*, 31 Mass. App. Ct. 201, 204 (1991), quoting from *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).[6] See *Commonwealth* v. *Mattos*, 404 Mass. 672, 680 (1989); *Commonwealth* v. *Wright*, 411 Mass. 678, 687 (1992).

2. *Search of the Defendant and the Mailbox.*

The next claim of error concerns the judge's denial of the motion to suppress evidence — cocaine and heroin — seized without a warrant from the defendant's mailbox. The defendant claims that the officers' actions do not fall within any recognized exception to the warrant requirement. The Commonwealth responds that the defendant had no expectation of privacy in the mailbox and the key case found inside it. In our review of the judge's ruling on the suppression motion, we may not rely on the facts as developed at trial. *Commonwealth* v. *Singer*, 29 Mass. App. Ct. 708, 709 n.1 (1991), and cases cited. As we observed earlier in this opinion, the

basis that he had joint possession of the heroin found on his companion. He and his companion had just completed a transaction with a passenger in a taxi.

[6]The defendant does not argue that he had a supportable basis to contest the search of the passenger in connection with his conviction of possession with intent to distribute a Class B substance.

testimony presented at the suppression hearing differed in some material aspects from that received at trial.

At the suppression hearing Officer Guzman testified that during the surveillance he observed the defendant walking in and out of No. 3 Ferguson Place several times. Guzman also testified that the defendant and Rodriguez merely had a conversation after Rodriguez got out of the car. He did not testify that he saw Rodriguez hand the defendant money, or that he saw Rodriguez put a small packet in his pocket. Rather Guzman stated that he saw Rodriguez put "something" in his pocket. Officer Fletcher stated at the suppression hearing that, as a result of his subsequent search of Rodriguez, he found heroin, rather than cocaine, as well as needles and a syringe.

As to what preceded the search of the mailbox, Fletcher testified that, after a brief conversation, he collared the defendant on the sidewalk and obtained the keys as a result of a "pat-down" search. There was no testimony offered by any of the officers that they suspected any contraband to be found in the mailbox before it was searched. Nor was there any evidence that the mailbox and the keys found on the defendant had similar markings. Finally, it is unclear from the hearing transcript whether the defendant was in the vicinity of the mailbox when the search took place.

a. *Expectation of privacy.* We conclude that the mailbox was constitutionally protected here because the defendant had a reasonable expectation of privacy in that area. In order for the Fourth Amendment to the United States Constitution or art. 14 to be implicated, the defendant must show that he subjectively believed he had a privacy interest in the thing searched and that this expectation is one society is prepared to recognize as reasonable. *Commonwealth* v. *Cadoret*, 388 Mass. 148, 150 (1983).

Unquestionably the defendant thought he had a privacy interest, because he locked the mailbox in order to keep others out. Security of one's mail is an interest which society

recognizes as reasonable.[7] Even though the defendant was not a tenant in the building and the hallway of the building was a place accessible to the public, the defendant's privacy interest in the mailbox is not diluted. See *Commonwealth* v. *Montanez*, 410 Mass. 302 (1991).

It strikes us as elementary that the receipt of letters and sealed packages is inherently private; mail has long been recognized as deserving of protection under the Fourteenth Amendment to the United States Constitution. See *United States* v. *Jacobsen*, 466 U.S. 109 (1984). Since a mailbox is the natural repository of these protected "effects," it should be accorded the same special protection. It shares characteristics with a locked footlocker or a rental locker found in public places, in which a defendant has been held to have an expectation of privacy. *United States* v. *Chadwick*, 433 U.S. 1, 11 (1977) (locked footlocker at airport). *Commonwealth* v. *Weiss*, 370 Mass. 416, 419 (1976) (rental locker at an airport).

b. *Search incident to arrest.* The Commonwealth suggests as an alternative argument that the search was incident to the defendant's arrest. Even assuming the police had probable cause to arrest the defendant, the Commonwealth's argument fails.[8]

The defendant concedes that he was under arrest when he was searched. A search incident to an arrest "generally is limited for purposes of both the Fourth Amendment . . . and art. 14 . . . to the body of the person arrested and the area and items within his or her immediate possession and control at the time." *Commonwealth* v. *Santiago*, 410 Mass. 737,

---

[7]For a discussion of factors to examine when determining if the defendant has an expectation of privacy in the area searched see *Commonwealth* v. *Pina*, 406 Mass. 540, 545, cert. denied, 498 U.S. 832 (1990), and cases cited therein.

[8]"[P]robable cause exists where, at the moment of arrest the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." *Commonwealth* v. *Santaliz*, 413 Mass. 238, 241 (1992). Probable cause can be based upon the collective knowledge of the police officers engaged in a joint effort. *Commonwealth* v. *Gullick*, 386 Mass. 278, 283 (1982).

743 (1991), and cases cited. Hence, the search of the defendant which led to the seizure of his keys and the $110 cash was justifiable. However, after his arrest, the mailbox and magnetic key case were not within the defendant's immediate control and, consequently, a warrantless search of those areas was not justified. Whether the defendant was standing inside the hallway where the mailboxes were located or standing outside of the building is of no consequence. In either event, the defendant could not have gained access to the locked mailbox and the key case inside; and he did not pose any threat that the evidence might be destroyed. See *Commonwealth* v. *Cohen*, 359 Mass. 140 (1971) (sugar cubes containing LSD found in refrigerator of defendant's apartment kitchen were not within defendant's immediate control even though defendant was seated at kitchen table). See also *Chimel* v. *California*, 395 U.S. 752, 763 (1969) (there is no justification for police officers to search through desk drawers or closed or concealed areas within room in which defendant is found). Contrast *Commonwealth* v. *Madera*, 402 Mass. 156, 161 (1988) (search of gym bag defendant was *carrying* was justified as search incident to arrest).

c. *Exigent circumstances*. Short of a search incident to arrest, the Commonwealth asserts that exigent circumstances justified the search. Under this exception, "there must be a showing that it was impracticable for the police to obtain a warrant and the standards as to exigency are strict." *Commonwealth* v. *Huffman*, 385 Mass. 122, 124-125 (1982), quoting from *Commonwealth* v. *Forde*, 367 Mass. 798, 800 (1975). To find a situation exigent there must be a specific threat that " 'based on the surrounding circumstances or the information at hand' it is reasonably concluded that 'the evidence will be destroyed or removed before . . . [the police] can secure a search warrant' " (citations omitted). *Huffman*, *supra* at 126. See also *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. 596, 599 (1991).

The record is devoid of any evidence that the mailbox and its contents would soon be removed or that it would have been impracticable to get a search warrant. The search took

place at 1:00 P.M., while the Holyoke District Court was open for business. It is safe to say that at least four officers were present on the scene to secure the foyer, while another could have obtained a warrant.[9] Finally, there was no testimony as to the existence of any accomplices or anyone who posed even a remote threat to the evidence. See *Commonwealth* v. *Hall*, 366 Mass. at 803 n.16; *Huffman, supra* at 126. Contrast *Commonwealth* v. *Amaral*, 16 Mass. App. Ct. 230, 234 (1983).

Since the Commonwealth has failed to meet its burden of justifying the warrantless search of the mailbox and the key case, the motion to suppress the cocaine and heroin found inside should have been allowed. *Huffman, supra* at 127, and cases cited. The judge's ruling was incorrect.

3. *Required Finding of Not Guilty.*

Even if the cocaine and heroin found in the mailbox had been suppressed, the judge would still have been amply warranted in denying the defendant's motion (made at the close of the Commonwealth's case) for a required finding of not guilty on the distribution charge. If brought home to the defendant, the evidence that he had just been seen with Rodriguez by experienced drug enforcement officers inside a building known by them as a haven for drug sellers; the observations of one officer who witnessed Rodriguez give money to the defendant and then walk out as he was placing a small packet into his front pocket; and the search of Rodriguez which revealed cocaine and the paraphernalia associated with its use, satisfied the standard under *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). The judge also heard the testimony of the officers who searched the defendant and discovered on his person a substantial amount of hard cash. Cf. *Commonwealth* v. *Crespo*, 3 Mass. App. Ct. 497, 501 (1975). Nor is this a situation where it was equally plausible, as the defendant contends, that he had just purchased drugs because none were found on his person.

---

[9]There was no evidence that the police department was short-handed or that the officers were called away to another location.

Contrast *Commonwealth* v. *Reid*, 29 Mass. App. Ct. 537, 538-539 (1990). There was no error.

4. *Conclusion.* Had the defendant's motion to suppress the evidence seized from the mailbox been successful, the twin charges of unlawful possession of cocaine and heroin with intent to distribute would lack evidentiary support. Therefore, we are required to reverse both convictions, as well as those which alleged that the underlying offenses occurred within 1,000 feet of school property. The judgments on those four counts are reversed and the findings are set aside; judgments are to enter for the defendant. The judgment founded on the judge's finding of guilty of unlawful distribution of cocaine is affirmed.

*So ordered.*