COMMONWEALTH *vs.* DWAYNE M. WILLIAMS, JR.

No. 09-P-53.

Suffolk. November 12, 2009. - March 31, 2010.

Present: McHUGH, BROWN, & HANLON, JJ.

*Constitutional Law,* Search and seizure, Confrontation of witnesses. *Search and Seizure,* Exigent circumstances, Warrant, Blood sample. *Practice, Criminal,* Confrontation of witnesses, Motion to suppress. *Evidence,* Blood sample.

A Boston Municipal Court judge properly allowed a criminal defendant's pretrial motion to suppress evidence discovered when police seized his clothing, without a warrant and over his objection, from a hospital at which he was being treated, where the seizure of the clothing was unreasonable because he had not forfeited his possessory interest in it, and the Commonwealth did not present adequate evidence of an exception to the warrant requirement, i.e., an exigency or otherwise. [492-493] HANLON, J., concurring.

COMPLAINT received and sworn to in the Roxbury Division of the Boston Municipal Court on March 5, 2007.

A pretrial motion to suppress evidence was heard by *Milton L. Wright, Jr.,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Margot Botsford,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.

*Amanda Lovell,* Assistant District Attorney, for the Commonwealth.

*Carlo A. Obligato,* Committee for Public Counsel Services, for the defendant.

BROWN, J. The defendant, Dwayne M. Williams, was charged in a complaint with possession of a class B drug with intent to distribute. Arguing that his rights under both the Federal and State Constitutions had been violated, the defendant filed a motion to suppress the drugs that had fallen out of his clothing after it had been seized by police without a warrant. After a

hearing, a District Court judge allowed the defendant's motion to suppress.[1]

We rehearse the facts as found by the motion judge.

"This case was heard on a stipulation of facts in the police report and the testimony of one witness, Detective Renee Payne-Callender. The Detective responded to Boston Medical Center after receiving a radio call that a male[] had been stabbed and was at the Boston Medical Center for treatment. That male is the defendant here. When the detective arrived at the hospital and attempted to speak to the defendant he refused to give any statement as to the stabbing. His clothing, which had what appeared to the detective as blood on it, was put into a plastic bag by hospital personnel.[2] The detective took the clothing out of the hospital bag and put it into brown paper bags and against protests from the defendant took the clothing away to the police station for deposit at the crime lab in order to test the blood.[3] Blood stains may more credibly be tested as soon after an event and are better kept in brown paper bags to allow drying and to prevent contamination. While the detective was removing from one bag the defendant's blue and white boxers which were stuffed in his timberland boots, a clear plastic bag that was blood stained and contained a yellowish rock like substance believed to be crack cocaine fell to the floor."

The facts were not in dispute at the hearing, nor are they in dispute on appeal. The defendant was treated at the emergency room of Boston Medical Center, a private nonprofit hospital.

---

[1]The Commonwealth's application for an interlocutory appeal was allowed by a single justice of the Supreme Judicial Court, pursuant to Mass.R.Crim.P. 15(b), as appearing in 422 Mass. 1501 (1996).

[2]Although neither party takes issue with this finding, it appears from the record that Detective Payne-Callender did not see blood on the clothing before she seized the hospital bags, but rather had been informed by officers who had responded to the scene and by hospital personnel that there was blood on the clothing.

[3]Contrary to this finding — that the clothes were transferred at the hospital — the record indicates that they were not removed from the plastic hospital bags and put in the brown paper bags until the detective had returned to the police station and there discovered the contraband. The precise location of the clothes at the time the police transferred them from the plastic to the paper bags and the discovery of the drugs, however, is not relevant to our inquiry concerning the propriety of the seizure, and neither party notes this apparent minor discrepancy in the judge's findings.

The police reports, to which the parties stipulated at the hearing and which the judge implicitly credited, make clear that a nurse gave Detective Payne-Callender three plastic hospital bags containing the defendant's clothing.[4]

According to the defendant, the failure to obtain a warrant in these circumstances was unreasonable under the State and Federal Constitutions. The Commonwealth argued that the chemical decomposition of the deoxyribonucleic acid (DNA) evidence that would occur by storing it in plastic bags, rather than paper bags, created an exigency that obviated the need to obtain a warrant. The judge did not find the Commonwealth's argument "persuasive."

The sole issue decided by the motion judge was whether an exigency excused the obligation of the police to obtain a warrant before they seized the defendant's clothes.[5] It is not disputed that the seizure was in furtherance of a criminal investigative function. The judge ruled that "[t]he defendant did not forfeit his possessory interest in his clothing by entering the hospital with a stab wound, and the hospital was not [a] joint possessor of defendant's clothing with authority to hand those over to the police and thus violating his Fourth Amendment rights in retrieving his clothing from the hospital without a warrant," citing *United States* v. *Neely,* 345 F.3d 366 (5th Cir. 2003).[6] The judge further ruled that "[s]ince no search warrant was applied for in this case and clothing was taken away from [the] hospital without

---

[4]There is an apparent misstatement in the record of the motion hearing, in which the prosecutor told the judge during argument that she "believe[d] that the detectives went [to the hospital] at 9:45 P.M.," and retrieved the clothing at that time. A careful reading of the police reports suggests, however, that the police went to the hospital immediately after the incident and were back at the station with the clothes by 5:47 P.M., because that is the time reflected on the initial incident report outlining these events.

The police later returned to the hospital upon learning that the defendant was going to be released, and arrested him there. A supplemental incident report outlining the second trip to the hospital was completed at 9:45 P.M. The defendant was booked at about 10:15 P.M.

[5]There is no question that the standards for establishing the narrow exception for exigent circumstances are strict and the burden of showing such exigency is on the Commonwealth.

[6]The question whether the hospital violated the defendant's constitutional rights by handing over his clothing to the police was not raised by either party below, nor have they addressed it on appeal.

a warrant there is no need to determine whether the police might have been able to simply place the clothing in a more evidence protective bag, i.e., brown paper without a warrant." The judge did, however, implicitly conclude that the police had ample time to seek and obtain a warrant at a nearby court.

"In reviewing a motion to suppress, we accord substantial deference to the motion judge's subsidiary findings and will not disturb them absent clear error." *Commonwealth* v. *Kaupp*, 453 Mass. 102, 105 (2009). See *Commonwealth* v. *Tyree*, 455 Mass. 676, 682 (2010). We "independently review[] the correctness of the judge's application of constitutional principles to the facts found." *Commonwealth* v. *Gentile*, 437 Mass. 569, 573 (2002), quoting from *Commonwealth* v. *Eckert*, 431 Mass. 591, 593 (2000).

On appeal, the defendant does not contest that blood evidence ought to be removed from plastic bags and stored in paper bags to preserve it,[7] but argues instead that nothing was adduced at the hearing that showed the need to do so here was so urgent that it obviated the requirement to obtain a warrant. It appears that the judge ruled implicitly, if not explicitly, that the Commonwealth failed to establish exigent circumstances because no reliable evidence was adduced regarding the time period in which blood can become contaminated. See *Commonwealth* v. *Huffman*, 385 Mass. 122, 125 (1982) (no exigent circumstances where "Commonwealth did not offer any evidence as to the time it would take to get a warrant, or indicate that it would be impractical to get one"). Nor does the record reflect that obtaining a warrant before the police seized the clothes was impracticable. The detective's generic testimony that "sooner [is] better" is insufficient to establish the exigency.

In the circumstances presented here, the police presumptively violated the defendant's rights under the Fourth Amendment to the United States Constitution when they removed his clothing from the hospital over his objection. See *United States* v. *Neely*, 345 F.3d at 370. We agree with the motion judge that the defend-

---

[7]The propriety of air drying blood evidence and storing it in brown paper bags to preserve it is fairly well recognized as an appropriate method by which to preserve such evidence. See generally *Williams* v. *Davis*, 301 F.3d 625, 630 (7th Cir. 2002). The judge, albeit somewhat cryptically, accepted this point when he found that "[b]lood stains may more credibly be tested as soon after an event and are better kept in brown paper bags to allow drying and to prevent contamination."

ant retained a possessory interest in the clothing, regardless of his status as a hospital patient. See, e.g., *ibid.* Cf. *Commonwealth v. Porter P.*, 456 Mass. 254, 262-264 (2010), and cases cited (regarding authority of third parties to consent to police entry and search); *id.* at 265 n.11. The Commonwealth failed to demonstrate that the defendant forfeited his possessory rights. Hospital staff placed his clothing in plastic bags in accordance with hospital policy and for the sole purpose of safeguarding effects. Evidence of hospital personnel storing the clothing in a bag further illustrates that the hospital did not consider itself an owner of the clothes and that the clothes were held for the defendant.[8] Because the hospital did not jointly own the clothing, the defendant, particularly in light of his vigorous protest, had no expectation or reason to believe that his belongings would be turned over to police without his authorization. Thus, as the Commonwealth did not present adequate evidence of an exception to the warrant requirement, an exigency or otherwise, the seizure of the defendant's clothing was unreasonable because he had not forfeited his possessory interest in the clothing.[9]

Deciding as we do, we have no occasion to discuss the question whether the evidence was in "plain view" and, therefore, could have been taken in any event without the police having to obtain a warrant. On appeal, each party briefly refers to this theory, without having raised it below. But see *Horton* v. *California*, 496 U.S. 128, 137 (1990) (officer "must . . . have a lawful right of access to the object itself").

> *Order allowing motion to suppress affirmed.*

---

[8]We acknowledge the general proposition that even if a private party may have breached some obligation of privacy, confidentiality, or other professional duty by turning over evidence to the police, the police are not thereby required to ignore that evidence. *Commonwealth* v. *Brandwein*, 435 Mass. 623, 631-632 (2002). On these facts, however, the seizure of the defendant's clothing was not permissible. See, e.g., *Commonwealth* v. *McCambridge*, 44 Mass. App. Ct. 285, 290 (1998) (admission in evidence of defendant's clothing, seized by police, was error).

[9]In a similar situation, the court in *People* v. *Yaniak*, 190 Misc. 2d 84, 88 (N.Y. 2001), held that as a bailee the hospital was required "to exercise ordinary and reasonable care for the defendant's clothes," and "had no authority to allow the clothes to be taken without a warrant."

HANLON, J. (concurring). I write separately because I am not persuaded that, in all instances, a "defendant retain[s] a possessory interest in [his] clothing, regardless of his status as a hospital patient." *Ante* at 492-493. See *Commonwealth* v. *Brandwein,* 435 Mass. 623, 632 (2002) (where "private parties . . . turn[] over to the police physical evidence that they have uncovered . . . the exclusionary rule does not exclude evidence obtained by way of purely private conduct"). I concur in the result, which I believe is dictated by the particular facts of this case: a warrantless seizure of the defendant's personal property, over his objection, with no showing that a warrant could not have been obtained in time to prevent damage to the evidence and, thus, no showing of exigency.[1] See *Commonwealth* v. *Tyree,* 455 Mass. 676, 684 (2010), quoting from *Commonwealth* v. *Forde,* 367 Mass. 798, 800 (1975) ("Under the exception for exigent circumstances, 'there must be a showing that it was impracticable for the police to obtain a warrant, and the standards as to exigency are strict' ").

---

[1] At the motion hearing, unfortunately, the parties stipulated to the facts in the police report and the judge heard the testimony of only one witness. That procedure left a number of unanswered questions about what occurred, including, particularly, the sequence of events. Nevertheless, the Commonwealth has the burden of proof on the motion and cannot benefit from the resulting ambiguities.