## COMMONWEALTH vs. MINH NGO.

Middlesex.   April 15, 1982. — August 26, 1982.

Present: GRANT, GREANEY, & SMITH, JJ.

*Search and Seizure*, Automobile, Exigent circumstances.

Where police officers did not have probable cause to search a defendant's
   automobile for narcotic drugs until a drug buyer cooperating with the
   police telephoned the defendant to arrange a meeting for the purchase
   of drugs from the defendant, and where the two-hour period between
   the telephone call and the time for the meeting was, in the circum-
   stances, too short to obtain a warrant, exigent circumstances justified
   the police officers in conducting a warrantless search of the defend-
   ant's automobile after they had arrested the defendant.  [339-342]

INDICTMENTS found and returned in the Superior Court
Department on December 12, 1978.

Motions to suppress were heard by *Dimond*, J., and the
cases were tried before *Hallisey*, J.

*William P. Homans, Jr.* (*Joseph M. Flak* with him) for
the defendant.

*Carmel A. J. Motherway*, Assistant District Attorney, for
the Commonwealth.

SMITH, J.   The defendant was convicted by a jury on two
indictments, each of which charged him with possession of
heroin with intent to distribute. He appeals from the denials
of two motions to suppress drugs and other evidence seized
in two separate searches; a warrantless search of the defend-
ant's automobile and a search with a warrant of a garage.
We affirm.

1. *The warrantless search of the defendant's automobile.*
On November 11, 1978, Chelsea police arrested a person
who was a major buyer of drugs from the defendant.  Dur-
ing the morning of November 13, he was interrogated by a
Federal agent and agreed to cooperate with the authorities.

He told the agent that he purchased drugs from the defendant on the average of twice a week and that his next scheduled purchase was to occur on that day, November 13. The purchases had taken place either in Boston or Stoneham in any one of the four motor vehicles owned by the defendant. At the request of the agent, the buyer telephoned the defendant with respect to the purchase to be made that day. The defendant told the buyer that the sale of the drugs would occur at 3:00 P.M. at a specified location in Boston. The buyer agreed with the police to meet the defendant while under police surveillance and to give a signal to the police if the defendant had the heroin with him. During the two-hour period between this telephone call and the time of the proposed sale the agent assembled other police officers, both Federal and local. By 3:00 P.M. the surveillance teams were in position at the suggested location in Boston. The defendant failed to appear at the appointed time and, after a telephone call from the buyer, agreed to meet him at a specified location in Stoneham. The buyer and the surveillance teams arrived in Stoneham to find the defendant already present, seated in one of his motor vehicles. The buyer entered the defendant's vehicle and after a short time signalled the police that the defendant had the heroin with him. The police arrested the defendant, made a warrantless search of the motor vehicle, and seized the drugs.

The judge correctly ruled that the Commonwealth had met its double burden of showing the existence of probable cause to believe that the defendant's motor vehicle contained drugs and the presence of exigent circumstances which would justify the seizure of those drugs without a search warrant. *Commonwealth* v. *Ortiz,* 376 Mass. 349, 353 (1978).[1] The

---

[1] The judge specifically found that the search of the defendant's motor vehicle took place after the arrest of the defendant. In *New York* v. *Belton,* 453 U.S. 454 (1981), the United States Supreme Court held that the police may lawfully search the passenger compartment of a motor vehicle without a warrant if an occupant of the motor vehicle is lawfully arrested. See *Commonwealth* v. *Beasley,* 13 Mass. App. Ct. 62, 64 (1982). *New York* v. *Belton, supra,* was decided after the judge's decision in the case. The

defendant concedes that probable cause was present,[2] but contends that there were no exigent circumstances to justify a warrantless search in view of the ample time that the police had to obtain an "anticipatory" warrant. The judge found that probable cause did not arise until the buyer telephoned the defendant at 1:00 P.M., when the defendant arranged for the "buy" to take place at 3:00 P.M. in Boston. The judge further found, and we agree, that in the circumstances the two-hour period was too short a time to obtain a Federal or a State search warrant. The record shows that it was necessary for the Federal agent to spend a considerable amount of time in assembling surveillance teams and moving them into position at the agreed location. Further, if the agent had attempted to correlate the large amount of information and material that the police had obtained in its long investigation of the defendant, reduce it to affidavit form and then proceed to a magistrate in order to obtain a search warrant,

Commonwealth, at the suppression hearing, stated that it was relying on the "automobile exception" (*Carroll* v. *United States*, 267 U.S. 132, 156 [1925]) and specifically disavowed justifying the search as incident to a lawful arrest. Because the defendant's evidence at the suppression hearing, as a result of the Commonwealth's statement, was pitched toward the automobile exception and not at the concept of a search incident to a lawful arrest, we do not consider *New York* v. *Belton, supra,* dispositive of the issue.

[2] In *United States* v. *Ross,* 456 U.S. 798 (1982), also decided after the decision in this case, the United States Supreme Court held that police officers who have lawfully stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within the vehicle, may conduct a warrantless search of the vehicle. Here the defendant concedes that there was probable cause to search his vehicle. We do not rely on *United States* v. *Ross, supra,* in upholding the judge's decisions with respect to the suppression motions as it is unclear at the present time whether that case applies to the facts in this case, i.e., a search of a parked car. See n.1 of Justice Marshall's dissent, *id.* at 828.

the time of the meeting and agreed purchase would have passed.[3]

The judge specifically found that one of the "exigent circumstances" that justified the warrantless search was the fact that the police did not possess any information as to which of his four motor vehicles the defendant was driving to the agreed location. In response to this finding, the defendant contends that the police could have obtained an "anticipatory" warrant, relying on *Commonwealth* v. *Soares*, 384 Mass. 149 (1981), decided two and one-half years after the search in this case. We need not decide whether an anticipatory warrant could have been obtained here because the judge found, and we agree, that the time was too short to obtain *any* warrant. Therefore, the warrantless search of the defendant's automobile was valid, and the judge's decision as to the suppression motion in regard to the automobile was not error.

2. *The search of the garage.* The defendant contends that the search of the garage made with a search warrant was invalid because the affidavit submitted for that warrant contained material obtained from the "illegal" search of the defendant's automobile. Because we hold that the search of the defendant's motor vehicle was lawful, the police could use observations they had made during that warrantless search in the affidavit submitted for the search warrant.

*Judgments affirmed.*

---

[3] The transcript of the hearing indicates the following question directed to the agent and his answer:

"Q. In this case what would you have done prior to actually going to the court house to get the warrant?"

"A. I would have had to sit and compile all the intelligence that I knew, but as far as I knew had never been reduced to writing, and written that along with the details of the debriefings and the arrests and the seizures on the 13th, up to that point in time, and compile that into an affidavit, and at that time it would have been after five o'clock."

The question and answer were in regard to the obtaining of a Federal warrant. But the same amount of time would have been necessary to prepare an affidavit for a State warrant, and the judge impliedly so found.