COMMONWEALTH *vs.* JOHN P. AMARAL.

Suffolk.   May 6, 1983. — June 23, 1983.

Present: GRANT, CUTTER, & SMITH, JJ.

*Practice, Criminal,* Motion to dismiss.   *Search and Seizure,* Exigent cir-
cumstances, Probable cause.   *Constitutional Law,* Search and seizure.
*Probable Cause.*

Dismissal of indictments against a defendant in the Superior Court was
not required by the fact that complaints charging him with the iden-
tical offenses had previously been dismissed in a District Court for lack
of prosecution, where the evidence warranted the Superior Court
judge's findings that the complaints had been dismissed *solely because*
of the absence of a key prosecution witness, that the defendant had not
raised the issue of his right to a speedy trial in the District Court pro-
ceeding, and that the defendant was not prejudiced by the resulting
delay.   [231]

A criminal defendant's motion to suppress evidence seized from his apart-
ment during a warrantless search by a police surveillance team was
properly denied where the police, as the result of their observations of
the defendant and a known seller of drugs, had probable cause to
believe that a quantity of cocaine was stored in the apartment, and
where the warrantless entry was justified by exigent circumstances, in-
cluding the likelihood that a person known by police to be in the apart-
ment would, because of commotion caused by the defendant's nearby
arrest, be alerted to destroy the cocaine.   [231-235]

INDICTMENTS found and returned in the Superior Court
Department on March 6, 1979.

Pretrial motions to dismiss the indictments and to sup-
press evidence were heard by *Kelley,* J., and the cases were
heard by *Brogna,* J.

*Robert J. Wheeler, Jr.,* for the defendant.

*Michael J. Traft,* Assistant District Attorney, for the
Commonwealth.

SMITH, J.   A Superior Court judge, sitting without a jury,
convicted the defendant on four indictments that charged

conspiracy and possession of controlled substances with intent to distribute. On appeal the defendant contends that his motions to dismiss the indictments and to suppress certain evidence were improperly denied. We find no error.

1. *Motion to dismiss indictments.* The Superior Court judge was not required to dismiss the indictments merely because a District Court judge had dismissed complaints for the identical offenses. *Commonwealth* v. *Bailey,* 13 Mass. App. Ct. 1019 (1982). The complaints had been dismissed in the District Court on January 31, 1979, over the objection of the Commonwealth, for lack of prosecution. The Superior Court judge made findings supported by the evidence that: (a) the sole reason for the dismissals in the District Court on January 31 was that the Commonwealth was unable to proceed because its key witness had not arrived at the time the cases were called; and (b) the defendant never raised the issue of speedy trial before the District Court as a ground for his dismissal motion. Contrast *Commonwealth* v. *Ludwig,* 370 Mass. 31 (1976); *Commonwealth* v. *Balliro,* 385 Mass. 618, 623 (1982). There is no evidence in this record to suggest that the prosecution was unreasonably lacking in diligence in bringing the defendant to trial. *Commonwealth* v. *Pomerleau,* 13 Mass. App. Ct. 530, 536 (1982). The judge's finding that the defendant was not prejudiced by the delay, see Mass.R.Crim.P. 36(c), 378 Mass. 912 (1979), is borne out by the record.

2. *Motion to suppress evidence.* The judge denied the motion to suppress the evidence that had been seized in a warrantless search of the defendant's apartment. The judge ruled that it was necessary for the police to enter the defendant's apartment without first obtaining a search warrant in order to prevent the destruction or removal of narcotics. We summarize his detailed findings.

An undercover agent (purchaser) entered into negotiations with a seller of drugs for the purchase of four ounces of cocaine. Because the seller was extremely secretive about the location and source of the drugs, he informed the purchaser that he would sell the cocaine only in a series of one

ounce transactions, and would not take him to his supplier. The seller specified that the sale take place at a busy intersection in Revere, which he stated was within walking distance of the supplier's abode. The purchaser then notified the police of the proposed site of the sale. A police officer remembered that, five days before, the seller had been followed to an apartment house on Ellerton Street, a short distance from the intersection. A surveillance team was dispatched to that location because it was considered a potential source of supply of narcotics to the seller, given its proximity to the intersection.

After arriving at the intersection with the purchaser, the seller left the purchaser and walked to the apartment house, which the police had under surveillance. The police observed the defendant come out of the apartment house, talk to the seller, return to the apartment house, enter a first floor apartment on the right (the defendant's apartment), and reemerge carrying a plastic bag containing a white powder. The defendant was accompanied by a young woman who, after the seller and defendant talked, returned to the defendant's apartment. The seller and defendant proceeded by truck to the place designated for the sale. On arrival, the seller got into the purchaser's automobile and informed him that he had the first ounce of cocaine, which he produced. The purchaser asked about the truck which had pulled in front of his automobile. The seller responded that it was the supplier waiting for his money and that the supplier had the rest of the cocaine. At this point, the seller and the defendant were placed under arrest, during the course of which the seller was shot. A search of the seller, the defendant and the truck did not disclose any cocaine. The arrests took place at about 9:00 P.M.

The intersection was well lighted, with public telephones nearby. As a result of the gunshot and the arrests, a large crowd gathered at the scene. After an ambulance arrived with its siren sounding, more people gathered, and a traffic jam ensued. Concerned about the other three ounces of cocaine which the seller had agreed to sell and being aware of the crowd and the increasing notoriety of the arrests, the

police at the scene notified the surveillance team, by radio, to secure the defendant's apartment

After the departure of the seller and the defendant in the truck to the proposed location of the sale, the police had continued surveillance of the defendant's apartment. A short time later, they heard sirens from the direction of the intersection. Shortly after, they received word to secure the defendant's apartment. They gained entrance to the hall outside the defendant's apartment, and as they approached the apartment door, a telephone inside rang. The officers then knocked, announced themselves as Revere police, and waited for about five seconds. They heard noise and movement within, but there was no response at the door. They kicked the door open, entered the apartment, and found three men and a woman. Narcotics were found in plain view in several rooms of the apartment.

We start our discussion by restating the well known rule that warrantless entries are per se unreasonable unless they fall within one of the few narrowly drawn exceptions to the Fourth Amendment warrant requirements. *Katz* v. *United States*, 389 U.S. 347, 357 (1967). *Arkansas* v. *Sanders*, 442 U.S. 753, 759 (1979). *Commonwealth* v. *Forde*, 367 Mass. 798, 800 (1975). One such exception to the warrant requirement is invoked by "exigent circumstances." See *McDonald* v. *United States*, 335 U.S. 451, 454-456 (1948). When police officers acting on probable cause reasonably believe that evidence or contraband will imminently be destroyed, exigent circumstances justify a warrantless entry and search of the premises. *United States* v. *Edwards*, 602 F.2d 458, 468-469 (1st Cir. 1979). See *Commonwealth* v. *Forde*, 367 Mass. at 800-801. Compare *Commonwealth* v. *Huffman*, 385 Mass. 122, 125 (1982). The question whether exigent circumstances exist depends upon an evaluation of all the circumstances as they appear to the police at the time. *Commonwealth* v. *Hall*, 366 Mass. 790, 802 (1975). *Commonwealth* v. *Young*, 382 Mass. 448, 456 (1981). *Commonwealth* v. *Huffman*, 385 Mass. at 126.

The police had probable cause to believe that narcotics were in the defendant's apartment. They had observed the defendant emerge from his apartment carrying a plastic bag containing white powder. The defendant was accompanied by a known seller of drugs. The police knew that the purchaser intended to buy four ounces of cocaine, yet only one ounce was found at the scene of the arrest. It was reasonable for the police to infer that the remaining three ounces were in the defendant's apartment.

It is important to note the time that probable cause arose, in the face of the defendant's contention that the police had an opportunity to obtain a warrant in advance of the search. The police knew of a previous connection between the seller and the apartment house where the defendant lived, but probable cause to search the defendant's apartment did not arise until the police observed the defendant emerge from the apartment, bag in hand, and leave in the company of a person known to be in the process of conducting a sale of narcotics. The police could not have foreseen the rapid series of events that unfolded immediately thereafter. Contrast *Commonwealth* v. *Forde,* 367 Mass. at 802 (police could have foreseen emergency and had three hours to secure a warrant).

All the circumstances demonstrate that there was reasonable cause to believe that the narcotics would be destroyed or removed before a search warrant could be obtained. The arrest of the seller and the defendant at a busy intersection; the commotion of the arrest; the shooting of the seller at the scene; the congregation of a large crowd of people; the discovery that the remaining three ounces of cocaine were not at the scene of the arrest; the knowledge that the apartment was occupied by a woman who appeared to be aware of the sale and perhaps awaiting the return of the defendant to obtain the three additional ounces; the short distance from the apartment to the intersection and the siren sounds audible outside the apartment; the concern that the woman would become apprehensive or receive a telephone warning from an observer in the crowd; and the ringing of the tele-

phone, overheard by the officers as they approached the apartment door, were, when evaluated in their totality, circumstances that justified the warrantless entry into the defendant's apartment.[1] It is also significant that the evidence sought was narcotics, which are "peculiarly vulnerable to speedy and easily accomplished destruction; and that very vulnerability is something that police officers in the course of their narcotics enforcement duties must be unfailingly conscious of and repeatedly speculate about if they are to function effectively to protect the public interest." *United States* v. *Johnson,* 561 F.2d 832, 844 (D.C. Cir.), cert. denied, 432 U.S. 907 (1977).

*Judgments affirmed.*

---

[1] Because we conclude that the original entry was lawful, we need not address the defendant's contention that a search warrant, obtained later, was invalid because it was issued on information obtained during an illegal search. *Commonwealth* v. *Minh Ngo,* 14 Mass. App. Ct. 339, 342 (1982).