Lauriat, J.
The defendant, ScotT. Bobbitt (“Bobbitt”), stands charged with several violations of the controlled substances laws arising from the discovery by police of drugs and drug processing equipment in his apartment in Waltham, Massachusetts on April 21, 1994. Bobbitt has now moved to suppress the drugs and drug processing equipment, as well as certain bank records, an automobile and certain statements that he and his girlfriend allegedly made to the police, on the grounds that the police conducted one or more unlawful, non-consensual warrantless searches of his apartment on April 21, 1994, and that any and all searches that were subsequently made pursuant to any search warrants were the fruits of the initial unlawful searches.
The court conducted an evidentiary hearing on the defendant’s Motion To Suppress Evidence on July 13, 1995. It heard testimony from Detective Joseph F. Brooks, Jr. and Officer Guy Cleary of the Waltham Police Department, and Brian Cormier. The court also received in evidence, for the purposes of the motion, a box of alleged crack cocaine processing equipment (Exhibit 1), a drinking glass and a test tube (Exhibit 2), a propane torch (Exhibit 3), search warrants issued for Bobbitt’s apartment and his bank account (Exhibits 4 and 5), photographs of Bobbitt’s apartment taken after the police executed the search warrant (Exhibit 6), and a report from the Chaulk Ambulance Service dated April 21, 1994 (Exhibit 7).
Upon consideration of the credible testimony of the witnesses and the exhibits, and the memoranda and arguments of counsel, the court makes the following findings of fact, rulings of law, and order with respect to the defendant’s Motion To Suppress Evidence.
FINDINGS OF FACT
1.At approximately 6:30 p.m. on April 21, 1994, the Waltham Police Department received a call, via 911, to respond to 203A Kings Way in Waltham for a man apparently having a seizure. Paramedic and EMT personnel from Chaulk Ambulance Service (“Chaulk") also responded.
2. The first person to arrive at 203A Kings Way was Officer Guy Cleary (“Cleary”) of the Waltham Police Department. Upon arriving, he observed a white male (later identified as Bobbitt) outside the apartment complex who appeared disoriented. He was waving his arms and had blood on his face. When Cleary approached Bobbitt, Bobbitt ran to the rear of the complex. Cleary followed and found Bobbitt there. After summoning the ambulance personnel to his location, Cleary attempted to speak to Bobbitt. Bobbitt was still disoriented and did not respond to Cleary’s questions, nor did he identify himself to Cleary. Cleary then spoke with Brian Cormier (“Cormier”), a friend of Bobbitt’s who had been visiting Bobbitt that afternoon. Cormier advised Cleary that Bobbitt had been having a seizure, but he provided no additional information, and he did not identity Bobbitt by name.
3. The medical personnel from Chaulk found Bobbitt combative and assaultive, and placed him in restraints after their arrival at about 6:35 p.m. (Exhibit 7). Their physical examination of Bobbitt revealed a 36-year-old white male, postseizure, with dilated pupils, flushed and sweaty skin, a high blood pressure and rapid pulse. He was given oxygen and blood samples were drawn. Bobbitt remained under restraint in the ambulance until he was removed from the scene by the paramedics at about 6:57 p.m. (Exhibit 7).
4. As the paramedics were attending to Bobbitt at the scene, they directed the EMTs and Cleary to go to Bobbitt’s apartment to see if any personal information, medical history, prescription drugs or medications that Bobbitt might have taken could be located and identified. Cleary was also responsible for insuring the EMTs’ safety inside the apartment. At this time, Bobbitt’s identify was still unknown.
5. Cleary and the two Chaulk EMTs proceeded to the exterior first-floor entrance to Bobbitt’s second-floor apartment and called out to see if anyone was inside. Hearing no response, they entered the door and proceeded to the second-floor apartment. There, they looked through the living room, kitchen, bathroom, master bedroom and a second bedroom. While in the master bedroom, Cleary observed what he believed to be drug processing equipment and drug residue in plain view on the floor and on a table next to the bed. In an open bedroom closet, he also observed a closed gray floor safe.
6. After observing these items, Cleary radioed or telephoned the Waltham Police Department, spoke to Detective Joseph F. Brooks, Jr. (“Brooks”) of the Drug Control Unit, and advised Brooks of his observations at 203A Kings Way in Waltham. The practice of the Waltham Police Department was to require detectives to draft search warrants and supporting affidavits. *126 Cleary still did not know and did not advise Brooks of Bobbitt’s identity.
7. Brooks and Detective Joseph Connors of the Waltham Police Department Drug Control Unit arrived at 203A Kings Way between 6:45 and 7:00 p.m. They entered Bobbitt’s apartment and were shown the safe and drug processing equipment by Cleary. Brooks and Connors then immediately left Bobbitt’s apartment and returned to the police station to draft an affidavit in support of a search warrant for the apartment. Cleary was assigned to remain at and secure the apartment. Neither Cleary, Brooks nor Connors searched for or seized any drugs, drug processing equipment, or other items while they were in the apartment from 6:45 to 7:00 p.m.
8. Brooks obtained a search warrant for Bobbitt’s apartment at 203A Kings Way from the Waltham District Court Clerk-Magistrate at about 9:00 p.m. on April 21, 1994. He and Connors immediately proceeded to the apartment, executed the search warrant, executed a thorough search of the apartment (Exhibit 6), and discovered and seized certain drugs, drug processing equipment and other items. (Exhibit 4).
9. Detectives Brooks and Connors had known of and had been investigating Bobbitt and his alleged drug activities for nearly a year prior to April 21, 1994. However, Bobbitt’s last known address had been 102A Central Street in Waltham. Neither Brooks nor Connors knew, on or prior to April 21, 1994, that Bobbitt had moved to 203A Kings Way in Waltham. The Wal-tham Police Department Drug Control Unit maintains its investigative files separately and apart from other units in the police department, and Cleary did not know or have access to Bobbitt or his file on or prior to April 21, 1994.
RULINGS OF LAW
When a warrantless search is conducted, the Commonwealth has the burden of showing that the search, and any resulting seizure, falls within the narrow class of permissive exceptions to the search warrant requirement. Commonwealth v. Phillips, 413 Mass. 50, 55(1992); Commonwealth v. Ferguson, 410 Mass. 611, 614 (1992); Commonwealth v. Franklin, 376 Mass. 885, 898 (1978). The Commonwealth contends that Cleary’s initial entry and search of Bobbitt’s apartment was permissible under the “exigent circumstances ” exception.
The test for determining whether “exigent circumstances” exist so as to justify a warrantless search is twofold: “(1) whether the authorities had reasonable ground to believe that an exigency existed, and (2) whether the actions of the [authorities) were reasonable under the circumstances.” Commonwealth v. Marchione, 384 Mass. 8, 11 (1981), citing Commonwealth v. Young, 382 Mass. 448, 456 (1981). A determination of exigency depends on an evaluation of all the circumstances as they appear to the police at the time of the operative facts. Commonwealth v. Collazo, 34 Mass.App.Ct. 79, 84 (1993).[1]
In the present case, Bobbitt had experienced a seizure, he was bleeding, and he was unable to relate any personal or medical information to the paramedics. The paramedics determined that it was necessary to obtain information regarding Bobbitt’s identification or medical history in order to treat him properly and directed Cleary, accompanied by the EMTs, to undertake a search of Bobbitt’s apartment for items which might reveal Bobbitt’s identify or his medical history. Cleary’s actions in this regard were reasonable. ‘The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." Commonwealth v. Hurd, 29 Mass. 929, 930 (1990), quoting Mincey v. Arizona, 437 U.S. 385, 392 (1978). Accordingly, the court concludes that the Commonwealth has sustained its burden of proving that exigent circumstances justified Cleary’s entry into and subsequent search of Bobbitt’s apartment.
During Cleary’s search of Bobbitt’s apartment, he discovered drug residue and drug processing equipment which were in plain view. In the process of a lawful search directed to finding certain materials, an officer can seize fruits or instrumentalities of a crime in plain view. Commonwealth v. Rodriguez, 378 Mass. 296, 303 (1979). Here, however, instead of seizing the drug paraphernalia, Cleary summoned Brooks and Connors of the Waltham Police Department Drug Control Unit to Bobbitt’s apartment. Brooks and Connors observed the drug-making equipment, drafted a supporting affidavit and, subsequently, executed a search warrant for the apartment. Cleary’s “plain view” observations during his lawful search were sufficient to establish probable cause to believe that the items sought would reasonably be expected to be located in Bobbitt’s apartment. See Commonwealth v. Cefalo, 381 Mass. 319, 328 (1980) (in order to establish probable cause, the affidavit must “contain enough information for the issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they may reasonably be expected to be located in the place to be searched”). Accordingly, the court concludes that the search warrant subsequently obtained and executed by Brooks and Connors was valid.
ORDER
For the foregoing reasons, the defendant’s Motion to Suppress Evidence is DENIED.

Whether the response of the police “was reasonable and therefore lawful, are matters to be evaluated in relation to the scene as it could appear to the officers at the time, not as it may seem to a scholar after the event with the benefit of leisured retrospective analysis.” Commonwealth v. Young, 382 Mass. 448, 456 (1981).